**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ARTHUR SOOKRA, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**PFIZER, INC., et al.**[1]<br><br>**Defendants.** | **No. 24-cv-1249-TSC-ZMF** |

**REPORT AND RECOMMENDATION**

Arthur Sookra and April Burch (together "Plaintiffs") are the parents of decedent Taylor Rose Sookra ("Taylor"), who tragically died on Christmas Day in 2021. *See* Second Am. Compl. ("SAC") ¶¶ 48–55. Together, Plaintiffs serve as Taylor's personal representatives for the purpose of this lawsuit. *See* SAC ¶ 4, ECF No. 47. Plaintiffs allege that administration of the Pfizer COVID-19 vaccine caused Taylor's death. The Public Readiness and Emergency Preparedness Act ("PREP Act") protects certain entities and individuals—such as pharmacies, physicians, and drug manufacturers—from lawsuits during a public health emergency. Plaintiffs bring PREP Act claims (Count I) and New York state tort claims (Counts I(A)–(C)) against Defendants Xavier Becerra and Dr. Robert Califf (together "Government Defendants") and Pfizer, Inc. ("Pfizer"), as well as non-PREP Act New York state tort claims (Counts II–III) against Dr. Mitchell Weiler and South Island Pediatrics (together "Medical Defendants"). For the below reasons, the undersigned

[1] The Court drops Berkeley Carroll School from the caption pursuant to Fed. R. Civ. P. 21 (allowing the Court to "add or drop a party" "at any time, on just terms" in response to a motion or *sua sponte*). When this case was transferred from E.D.N.Y. to D.D.C., this Defendant was terminated from the case. *See* Pls.' Am. Compl. at ¶¶ 5–9, ECF No. 17.

recommends that: (1) Government Defendants' Motion be GRANTED; (2) Pfizer's Motion be GRANTED; and (3) Medical Defendants' Motion be GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. The PREP Act and COVID-19

In 2005, Congress passed the PREP Act, Pub. L. No. 109-148, 119 Stat. 2818, Division C (2005) (codified at 42 U.S.C. §§ 247d-6d, 247d-6e), to encourage the development and use of medical countermeasures in response to public health emergencies. *See* Cong. Rsch. Serv., *The PREP Act and COVID-19, Part 2: The PREP Act Declaration for COVID-19 Countermeasures* 1 (updated Jan. 3, 2025), https://perma.cc/Q9PC-33HX. The Act authorizes the Secretary of the United States Department of Health and Human Services ("the Secretary") to make "a determination that a disease or other health condition or other threat to health constitutes a public emergency[.]" 42 U.S.C. § 247d-6d(b)(1). Upon such a determination, the Secretary "may make a declaration . . . recommending, under conditions as the Secretary may specify, the manufacture, testing, development, administration, or use of one or more covered countermeasures." 42 U.S.C. § 247d-6d(b)(1). The Secretary's declaration renders covered individuals "immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from" the manufacture, distribution, administration, or use of covered countermeasures. *See* 42 U.S.C. § 247d-6d(a)(1). Under the Act, "covered countermeasure" includes (1) a "biological product . . . that is authorized for emergency use," and (2) a "qualified pandemic or epidemic product," including a "biological product . . . licensed . . . to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic." *See* 42 U.S.C. §§ 247d-6d(i)(1)(A), (1)(C), (7)(A).

On March 17, 2020, the Secretary issued a declaration pursuant to the PREP Act for countermeasures responding to the COVID-19 pandemic (the "Declaration"). *See* Decl. Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15, 198-01 (Mar. 17, 2020).

Those injured by covered countermeasures are not without remedy. Once the Secretary issues a declaration, the Treasury Department establishes "an emergency fund designated as the 'Covered Countermeasure Process Fund' [("CCPF")] for the purposes of providing . . . compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." *See* 42 U.S.C. § 247d-6e(a). The Countermeasures Injury Compensation Program ("CICP") administers the CCPF through a no-fault claims process. *See* 42 C.F.R. § 110.1. The PREP Act also provides a federal cause of action for death or injury caused by "willful misconduct" as the sole exception to PREP Act immunity. *See* 42 U.S.C. §§ 247d-6d(d).

The PREP Act requires prospective willful misconduct plaintiffs to follow several specific procedures before bringing suit. *See generally* 42 U.S.C. § 247d-6d(e). All individuals must first seek compensation from the CCPF. 42 U.S.C. §§ 247d-6e(a), (d)(1). Individuals must then wait for denial or for 240 days to elapse without a final determination on the request before bringing suit. 42 U.S.C. § 247d-6e(d)(1). An individual may accept CCPF compensation or bring a PREP Act willful misconduct claim. *See* 42 U.S.C. § 247d-6e(d)(5). Accepting CCPF compensation bars bringing a PREP Act suit. See 42 U.S.C. § 247d-6e(d)(5). An individual need not follow this process if the CCPF is unfunded. *See* 42 U.S.C. § 247d-6e(d)(1).

B. Factual Background

On July 21, 2021 and August 10, 2021, Dr. Mitchell Weiler administered Taylor's first and second doses of the Pfizer COVID-19 vaccine, respectively, at South Island Pediatrics. *See* SAC ¶¶ 18, 19. At that time, Taylor did not present with any risk factors for myocarditis or heart disease. *See* SAC ¶ 20.

On December 22, 2021, Taylor, experiencing flu-like symptoms, sought treatment from Dr. Weiler. *See* SAC ¶ 49. At that appointment, Taylor took a COVID-19 PCR test, which later came back "negative." *See* SAC ¶¶ 50, 53. On December 24, 2021, Taylor "was alert and some symptoms had subsided." *See* SAC ¶ 54. On December 25, 2021, at 1:30 AM, Taylor's mother found Taylor unresponsive. *See* SAC ¶ 55. Plaintiffs took Taylor to the hospital—forty minutes later, Taylor was pronounced dead. *See* SAC ¶ 56.

The Medical Examiner's Report provided Taylor's cause of death as "Acute cardiac failure [d]ue to[] [m]yocarditis" and noted "COVID-19 infection with pneumonitis" as another "[s]ignificant [c]ondition[.]" *See* SAC, Ex. D ("Medical Examiner's Report") 219–20, ECF No. 47-3. Plaintiffs allege that during a conference call following Taylor's autopsy, the Medical Examiner opined that "Pfizer's COVID-19 vaccine caused the myocarditis that killed Taylor Sookra," and that "Taylor died with COVID-19, not of COVID-19." SAC ¶¶ 59, 61.

C. Procedural History

On December 26, 2023, Plaintiffs filed their complaint in the Eastern District of New York. *See* Compl., ECF No. 1. On April 30, 2024, the case was transferred to this Court, and Plaintiffs filed their First Amended Complaint. *See* Am. Compl., ECF No. 17. On May 6, 2024, Judge Chutkan referred the case to the undersigned for full case management. *See* Min. Order (May 6, 2024). On July 22, 2024, Plaintiffs filed their Second Amended Complaint, alleging three counts:

(1) PREP Act claims and state tort law claims[2] against Pfizer and Government Defendants, *see* SAC at 11–15; (2) a New York State wrongful death claim as to Medical Defendants, *see* SAC at 15; and (3) a New York State medical malpractice claim as to Medical Defendants. *See* SAC at 15–16. Plaintiffs claim this Court has: (1) subject-matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(1)[3] and the PREP Act, 42 U.S.C. § 247d-6d(e)(1); and (2) supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 and the PREP Act, 42 U.S.C. § 247d-6d(e)(2).

On August 22, 2024, Defendant Pfizer, Medical Defendants, and Government Defendants filed their Motions to Dismiss. *See* Def. Pfizer's Memo. in Supp. Mot. Dismiss Pls.' Sec. Am. Compl. ("Pfizer's Mot. Dismiss"), ECF No. 50-1; *see also* Defs. Mitchell Weiler's and South Island Pediatrics, PC's Memo. in Supp. Mot. Dismiss Pls.' Sec. Am. Compl. ("Med. Defs.' Mot. Dismiss"), ECF No. 51-1; *see also* Federal Defs.' Memo. in Supp. Mot. Dismiss Pls.' Sec. Am. Compl. ("Gov't Defs.' Mot. Dismiss"), ECF No. 52-1. All defendants argue that Plaintiffs failed to exhaust administrative remedies and failed to follow procedural requirements pursuant to the PREP Act. *See* Pfizer's Mot. Dismiss at 10–13; Med. Defs.' Mot. Dismiss at 20–22, 24; Gov't Defs.' Mot. Dismiss at 14–17. All defendants further argue that Plaintiffs fail to plead "willful misconduct" with particularity as required by the PREP Act. *See* Pfizer's Mot. Dismiss at 13–18;

---

[2] Plaintiffs allege that Pfizer's willful misconduct under the PREP Act also amounted to New York state wrongful death, actual fraud, and constructive fraud.

[3] Section 1343(a)(1) refers to civil rights claims. But Plaintiffs have not alleged such claims. Nevertheless, because the PREP Act provides exclusive jurisdiction to this Court for claims of "willful misconduct," and because the Civil Cover Sheet indicates federal question as the jurisdictional basis, the undersigned reviews the claim under federal question jurisdiction. *See* Civil Cover Sheet, ECF No. 2 at 1.

Med. Defs.' Mot. Dismiss at 23–24; Gov't Defs.' Mot. Dismiss at 17–24. The matter is fully briefed. *See* ECF Nos. 56, 57, 58, 61, 62, 63.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Their power to adjudicate cases must derive from either Article III of the U.S. Constitution or an express statutory provision. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998). Fed. R. Civ. P. 12(b)(1) requires dismissal of a claim where the court lacks subject-matter jurisdiction. "Absent subject-matter jurisdiction, this Court is powerless to make any further inquiries and has no power to adjudicate the substance of [a] Rule 12(b)(6) motion, which is necessarily a judgment on the merits." *See Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F. Supp. 3d 16 (D.D.C. 2019) (internal citations and quotations omitted).

Generally, "the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." *Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114, 122 (D.D.C. 2018). Because it concerns a court's ability to hear a claim, a court must scrutinize the plaintiff's jurisdictional allegations more closely than in considering a motion to dismiss under Rule 12(b)(6). *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003). In deciding a Rule 12(b)(1) motion, the court must "accept as true all of the factual allegations contained in the complaint" and draw all reasonable inferences in favor of the plaintiff. *Brown v. Dist. of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008). But courts are "not required . . . to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154, F. Supp. 2d 18, 22 (D.D.C. 2000).

## III. DISCUSSION

### A. PREP Act and State Law Claims Against Government Defendants

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Such waiver "cannot be implied but must be unequivocally expressed." *See United States v. King*, 395 U.S. 1, 4 (1969). Because "[s]overeign immunity is jurisdictional in nature," a court must dismiss a claim barred by it under Fed. R. Civ. P. 12(b)(1). *See Meyer*, 510 U.S. at 475; *see also Edwards v. United States*, 211 F. Supp. 3d 234, 236 (D.D.C. 2016).

Plaintiffs argue that the PREP Act's definition of "covered person" amounts to a waiver of sovereign immunity. *See* Pls.' Memo in Opp. to Gov't Defs.' Mot. to Dismiss ("Pls.' Opp. Gov't Defs."), ECF No. 58 at 3–4 (citing 42 U.S.C. § 247d-6d(i)(2)). However, "[t]he PREP Act, rather than waiving [sovereign] immunity, explicitly preserves it." Order, *Watts v. Austin*, No. 23-cv-1544 (D.D.C. Sept. 24, 2024) (dismissing PREP Act vaccine death lawsuit on sovereign immunity grounds). Specifically, the PREP Act provides that: "[n]othing in this section shall be construed . . . to waive sovereign immunity or to abrogate or limit any defense or protection available to the United States or its agencies, instrumentalities, officers, or employees." 42 U.S.C. § 247d-6d(f).

Plaintiffs argue that the PREP Act's willful misconduct exception is "the sole exception to the immunity from suit and liability of covered persons." *See* Pls.' Opp. Gov't Defs. at 3–4 (quoting 42 U.S.C. § 247d-6d(d)(1)). But the immunity the PREP Act is referring to is the immunity from liability granted by the act itself, not to sovereign immunity. Indeed, the cited statutory language refers to immunity from suit and liability "set forth in subsection (a)" of Section

247d-6d. The government's "general immunity from suit" is "independent[] of the PREP Act['s]" "immunity from suit under certain circumstances." *Watts*, No. 23-cv-1544, at 1–2.

Because Plaintiffs cannot identify any applicable waiver, and because the PREP Act outright preserves it, sovereign immunity provides a complete and uncurable bar to claims against Government Defendants. *See King*, 395 U.S. at 4; *Watts*, No. 23-cv-1544, at 1–2. While courts ordinarily dismiss for lack of subject-matter jurisdiction without prejudice, dismissal with prejudice is appropriate where sovereign immunity applies and "no other court has the power to hear the case." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988); *see also Simon v. Republic of Hungary*, 579 F. Supp. 3d 91, 97 (D.D.C. 2021), *aff'd in part, vacated in part, remanded*, 77 F.4th 1077 (D.C. Cir. 2023) (dismissing claims with prejudice where there was "an uncurable lack of subject[-]matter jurisdiction due to sovereign immunity"). Thus, the undersigned recommends dismissal of Counts I, I(A), I(B), and I(C) against Government Defendants with prejudice.

B. Claims Against Pfizer

1. *PREP Act Claims*

"[W]hen exhaustion is mandated by statute, courts are not free to carve out exceptions that are not supported by the text." *Martin v. United States*, No. 05-cv-2506-RMC, 2006 WL 2714944, at *5 (D.D.C. Sept. 22, 2006). Exhaustion requirements may be jurisdictional or non-jurisdictional. *See Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247–48 (D.C. Cir. 2004). Jurisdictional exhaustion "arises when Congress requires resort to the administrative process as a predicate to judicial review" using "sweeping and direct" language. *Id.* at 1247–48. "Whether a statute requires exhaustion [as a predicate to suit] is purely a question of statutory interpretation." *Id.* at 1247. When there is a jurisdictional exhaustion requirement, and no statutorily prescribed exceptions

apply, "[t]he District Court must dismiss [the suit] for lack of subject[-]matter jurisdiction." *See Gardner v. United States*, 211 F.3d 1305, 1311 (D.C. Cir. 2000).

In *Gardner v. United States*, the D.C. Circuit found jurisdictional exhaustion where a statute provided that "[e]xcept as provided in section[] . . . 6213(a), . . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." *See id.* at 1311. In another illustrative case, Judge Collyer found a jurisdictional exhaustion requirement in the following provision: "no suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously . . . assessed or collected . . . until a claim for refund or credit has been duly filed." *See Martin v. United States*, No. 05-cv-2506, 2006 WL 2714944, at *4 (D.D.C. Sept. 22, 2006). The PREP Act provides similarly "sweeping and direct" language. Specifically, the PREP Act states that "a covered individual may not bring a civil action . . . unless such individual has exhausted such remedies as are available." 42 U.S.C. § 247d-6e(d)(1). Thus, where individuals do not exhaust PREP Act administrative remedies, the district court must dismiss pursuant to Fed. R. Civ. P. 12(b)(1), unless a statutory exception applies. *See Gardner*, 211 F.3d at 1311.

Plaintiffs failed to exhaust administrative remedies. They did not file for compensation from the CCPF, which the PREP Act requires as a prerequisite to suit. *See* 42 U.S.C. § 247d-6e(a), (d)(1). Such failure mandates dismissal. *See Zelig v. City Med. Of New Jersey PC*, No. 21-cv-961, slip op. at 2 (D.D.C. July 9, 2021) ("*Zelig* Op.") (dismissing PREP Act claim where plaintiff did not "allege in his Complaint that he exhausted available administrative remedies.").

Plaintiffs attempt to sidestep the exhaustion requirement by arguing that: (1) the CCPF has not been funded because the program has received only $15,000,000; and (2) the Secretary "has effectively failed to make a final determination 240 days after a request was filed." *See* Pls.' Memo

in Opp. Pfizer's Mot. Dismiss 4–5 ("Pls.' Opp. Pfizer"), ECF No. 56 Neither argument is persuasive.

Plaintiffs acknowledge that the CCPF receives $15,000,000 in funding per year. *See* SAC ¶ 66. Thus, the failure-to-fund exception does not apply. *See* 42 U.S.C. § 247d-6e(d)(1). Plaintiffs respond by invoking the canon of statutory interpretation which cautions against reading statutes to yield "absurd or futile results." *See* Pls.' Opp. Pfizer at 4–6 (citing *United States v. Am. Trucking Ass'n*, 310 U.S. 534, 543 (1940) and *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010)). They argue that it would be "absurd" to require plaintiffs to seek CCPF funds when it is not adequately funded. *See id.* at 5. But the canon "imposes a high threshold," requiring that the "statutory outcome . . . defies rationality." *Cook*, 594 F.3d at 891. Plaintiffs cannot meet that high bar because Plaintiffs offer no evidence that the CCPF's funding "is not sufficient." *See* Pls.' Opp. Pfizer at 5. Severely undermining Plaintiff's contention, $78 million of the $80 million in the CCPF for fiscal year 2025 were carried over from the previous year, indicating an excess—not a shortage—of funding. *See* USA Spending, *Covered Countermeasure Process Fund, Health Resources and Services Administration, Health and Human Services: FY 2025 Snapshot*, https://perma.cc/EN52-3V73 (hereinafter "CCPF FY 2025 Snapshot"). Moreover, there is a statutory safety valve which prevents the "absurd" result of a nominal payment offer. An individual can accept CICP's offer *or* file suit if the offer is not to their liking. *See* 42 U.S.C. § 247d-6e(d)(5). And contrary to Plaintiffs' assertion, there is no cap on recovery from the CCPF, nor reason to believe CICP will not pay out.

Because Plaintiffs failed to file a CCPF claim, the 240-day clock never started for the CICP to render its decision. Thus, Plaintiffs are foreclosed from arguing the 240-day exception to administrative exhaustion requirement applies. *See* 42 U.S.C. § 247d-6e(d)(1).

Somehow, Plaintiffs still argue that the Secretary "effectively failed to make a final determination 240 days after a request was filed." *See* Pls.' Opp. Pfizer at 4. To support this deviation from reality, Plaintiffs invoke the rule that "parties need not engage in fruitless engagements with the administrative process where the exercise would be 'futile because of the certainty of an adverse decision.'" *See id.* at 5 (citing *Comms. Workers of Am. v. Am. Telephone & Telegraph Co.*, 40 F.3d 426, 309 (D.C. Cir. 1994)). Crucially, Plaintiffs ignore the futility doctrine's caveat "that [an administrative remedy] exhaustion requirement may be waived in only the *most exceptional* circumstances." *See Comms. Workers of Am. v. Am. Telephone & Telegraph Co.*, 40 F.3d 426 at 432 (emphasis added). "The futility exception is . . . quite restricted . . . and has been applied only when resort to administrative remedies is 'clearly useless.'" *Id.* (quoting *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986)). Plaintiffs have not alleged facts that support their claim that filing a CCPF claim would have been "clearly useless." *See generally* SAC. Indeed, as Plaintiffs concede, the CICP has paid on claims related to injuries from COVID-19 vaccines. *See* Pls.' Opp. Pfizer at 6, n.1 (detailing compensation made on CICP claims relating to alleged vaccine injuries); *see also* Health Resources & Servs. Admin., CICP Data, Aggregate Data as of October 1, 2024, https://perma.cc/D7SP-QSMD (62 COVID-19 vaccine claims have been found eligible for compensation). And, as previously noted, the CCPF had $78 million remaining at the end of fiscal year 2024 for payout of claims. *See* CCPF FY 2025 Snapshot.

Because the PREP Act contains "sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion" and because no exception applies, this Court

lacks subject-matter jurisdiction over Plaintiffs' PREP Act claims. *See Simon v. U.S. Dep't of Justice*, No. 20-cv-0580, 2021 WL 1578293, at *3.[4]

2. *PREP Act-State Law Claims Against Pfizer*[5]

"The PREP Act's broad grant of immunity has one carveout permitting willful misconduct claims to be brought exclusively in the District Court for the District of Columbia." *See Caratini-Soto v. Puerto Rico*, No. 23-cv-1111, 2023 WL 11196890, at *5 (D.P.R. Dec. 28, 2023) (citing 42 U.S.C. § 247d-6d(d)(1)). PREP Act immunity applies to "suit and liability under Federal and State law." 42 U.S.C. § 247d-6d(a)(1). Despite this clear language, Plaintiffs read the statute as allowing state tort law claims against covered individuals such as Pfizer, pointing to § 247d(e)(2):

> The substantive law for decision in a[] [willful misconduct] action . . . shall be derived from the law, including choice of law principles, of the State in which the alleged willful misconduct occurred, unless such law is inconsistent with or preempted by Federal law, including provisions of [the PREP Act].

*See* Pls.' Opp. Pfizer at 8 (citing U.S.C. § 247d(e)(2)). Plaintiff mistakes a provision that supplements the statutory definition of "willful misconduct," *see* 42 U.S.C. § 247d-6d(c)(A)(i)–(iii) (setting forth elements Plaintiffs must plead with particularity to bring a willful misconduct

[4] Plaintiffs also neglected other PREP Act requirements. First, while Plaintiffs attached certified medical records to their Second Amended Complaint, *see* Medical Examiner's Report, SAC Ex. D 219–20, ECF No. 47-3, those records do not document a "proximate causal connection" between Taylor's death and the administration or use of a covered countermeasure, as required by the PREP Act. *See* 42 U.S.C. § 247d-6d(e)(4)(C). The consequence for such failure is dismissal. *See Zelig* Op. at 2 (dismissing PREP Act claim where "Plaintiff did not file a verified complaint with the required attached medical documents."). Second, Plaintiffs failed to apply for a three-judge court, as required by both statute and this Court's Local Civil Rules. *See* 42 U.S.C. § 247d-6d(e)(5); LCvR 9.1 (requiring filing of an Application for Three-Judge Court); ECF Nos. 47, 47-1, 47-2, 47-3 (no application for a three-judge court appended).

[5] Plaintiffs nest state tort law claims within their PREP Act claims, alleging the state law violations amount to PREP Act willful misconduct. This discussion pertains to those claims—Counts I(A), I(B), and I(C).

claim), for permission to bring state law claims against otherwise immune entities. Nothing in the PREP Act supports that state law claims against covered persons administering covered countermeasures can be brought before this Court. Rather, Plaintiffs' interpretation violates the PREP Act's: (1) statement that the "exclusive Federal cause of action" for willful misconduct is the "sole exception to the [PREP Act's] immunity from suit and liability," *see* 42 U.S.C. § 247d-6d(d)(1); and (2) provision of immunity from suit under State law, *see* 42 U.S.C. § 247d-6d(a)(1). To find otherwise would impermissibly reduce several key provisions in the PREP Act to "words that have no effect." *See Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1068 (D.C. Cir. 2018).

Here, Plaintiffs have acknowledged that Pfizer is a "covered person" and the COVID-19 vaccine is a "covered countermeasure" entitled to immunity under the PREP Act. *See* SAC ¶¶ 17, 72–74. Therefore, Plaintiffs' sole course of action as to Pfizer is a federal willful misconduct action. However, because all claims for CCPF funds "must be filed within one year of the date of administration or use of a covered countermeasure that is alleged to have caused the injury," *see* 42 C.F.R. § 110.42, it is now too late for Plaintiffs to pursue and exhaust their administrative remedies and then file a willful misconduct lawsuit before this Court.

Because Plaintiffs are now time barred from commencing administrative remedies, "no other court has the power to hear the case." *Frigard*, 862 F.2d at 204. Thus, the undersigned recommends dismissing Counts I, I(A), I(B), and I(C) (both PREP Act and state law claims) against Defendant Pfizer with prejudice. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1339 (D.C. Cir. 2015) ("Dismissal with prejudice is warranted when the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

C. State Law Claims against Medical Defendants

Because the undersigned recommends dismissing all of Plaintiffs' federal law claims, only state law claims against Medical Defendants remain. *See* SAC ¶¶ 95–100 (Counts II and III). Plaintiffs assert supplemental jurisdiction as to their state law claims.[6] *See* SAC ¶ 3.

When a district court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) and dismisses all other federal question claims, it has the discretion to decline to continue to exercise supplemental jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367(c)(3). Indeed, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). In deciding whether to exercise supplemental jurisdiction over remaining state law claims, a court must consider judicial economy, convenience, fairness to litigants, and comity. *See id.* at 726. In general, where a court dismisses all federal claims, the factors weigh against a court's exercise of supplemental jurisdiction. *See, e.g., Williams v. Savage*, 569 F.Supp.2d 99, 113 (D.D.C. 2008) (declining to exercise supplemental jurisdiction over remaining fraud and negligence claims).

Taken together, the factors cut against this Court retaining jurisdiction over Plaintiffs' state law claims. First, because all remaining state law claims concern events that took place in New York—not Washington, D.C.—judicial economy and convenience support dismissal. And judicial comity favors dismissal, since New York state courts are better suited to apply New York

[6] Plaintiffs also claim that the PREP Act serves as a jurisdictional basis for their state law claims, citing 42 U.S.C. § 247d(e)(2). However, the PREP Act cannot serve as a jurisdictional basis for state law claims in this Court. The statute in no uncertain terms provides an "exclusive Federal cause of action" for willful misconduct as the "sole exception to the [PREP Act's] immunity from suit and liability." *See* 42 U.S.C. § 247d-6d(d)(1). And Plaintiffs cite no case law supporting otherwise. Thus, the Court considers only 42 U.S.C. § 1367 as a basis for jurisdiction over Plaintiffs' state law claims against Medical Defendants (Counts II and III). *See* SAC ¶¶ 95–100.

substantive law. *See Vuyyuru v. Bank of North America, Inc.*, No. 21-cv-762, 2022 WL 1124800, at *6 (D.D.C. Apr. 14, 2022). Further, Plaintiffs will not be prejudiced by dismissal of their state law claims because 28 U.S.C. § 1367(d) tolls any statute of limitations as to Plaintiffs' remaining state law claims during their pendency and for an additional thirty days following dismissal. *See Artis v. District of Columbia*, 583 U.S. 71, 74–75 (2018). Thus, the undersigned recommends the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss without prejudice Counts II and III for lack of subject-matter jurisdiction. *See Howard v. Run Hope Work, Inc.*, No. 24-cv-1371, 2024 WL 48228113, at *3 (D.D.C. Nov. 19, 2024) (declining to retain jurisdiction over and dismissing without prejudice remaining state law claims for lack of subject-matter jurisdiction).

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends:

- GRANTING Government Defendants' Motion to Dismiss by dismissing Counts I, I(A), I(B), and I(C) with prejudice;
- GRANTING Defendant Pfizer's Motion to Dismiss by dismissing Counts I, I(A), I(B), and I(C) with prejudice; and
- GRANTING in part and DENYING in part Medical Defendants' Motion to Dismiss by dismissing Counts II and III without prejudice.

## V. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that, under the provisions of Local Rule 72.3(b) of the U.S. District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must

specifically identify the portion of the report and/or recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).

2025.01.30
17:22:19 -05'00'

Date: January 30, 2025

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE